G. & S. FOODS, INC., et al., Plaintiffs,

v.

George VAVAROUTSOS et al., Defendants.

No. 75 C 2237.

United States District Court, N. D. Illinois, E. D.

Aug. 31, 1977.

Bryon P. Finegan, Des Plaines, Ill., for plaintiffs.

Samuel K. Skinner, U.S. Atty., N. D. of Ill., Chicago, Ill., William E. Ray, Jr., Yeschek, Ray & Assoc. Ltd., Minocqua, Wis., for defendants.

Memorandum Order

LEIGHTON, District Judge.

This cause arises by reason of an action brought by plaintiffs/counter-defendants (hereinafter "plaintiffs"): G. & S. Foods, Inc.; two of its shareholders, John B. Schramm and Diane L. Kesul; and a guarantor of a loan made to the corporation,

Carol Schramm, against defendants: George Vavaroutsos, a shareholder; the corporation's attorney, Ronald S. Urkovich; the trustee and beneficiaries of a land trust which held title to the premises leased by the corporation; the Columbia National Bank (hereinafter "Columbia National") and its president, William E. Braun; and the Small Business Administration (hereinafter "SBA").[1] The suit was filed originally in the Circuit Court of Cook County, Illinois. SBA removed it to this court pursuant to 28 U.S.C. §§ 1441, 1446. The cause is now before the court on the motion of defendant/counter-plaintiff SBA for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on its counterclaim in which it seeks to reduce to judgment an indebtedness based upon a promissory note executed by plaintiff G. & S. Foods, Inc. and guaranteed by plaintiffs John B. Schramm, Diane L. Kesul, and Carol Schramm and by defendant/cross-defendant (hereinafter "defendant") George Vavaroutsos. The court finds that there are no issues of material fact and that defendant SBA is entitled to judgment as a matter of law; the motion is therefore granted.

In their fifty-seven paragraph, one count complaint, plaintiffs allege that defendant Vavaroutsos has breached various fiduciary duties owed to the corporation by virtue of his majority shareholder status and to the other shareholders, John B. Schramm and Diane L. Kesul, by virtue of a confidential relationship between them. Most importantly for purposes of the motion currently before the court, plaintiffs allege that, in early 1974, Vavaroutsos solicited a loan on behalf of the corporation from the Columbia National through Braun. The loan was assigned to the SBA. The loan application contained misrepresentations concerning the amounts invested in and lent to the corporation by its shareholders. Plaintiffs allege that they first learned of the misrepresentations at a meeting with Vavaroutsos and Braun and initially refused to execute the documents necessary to complete the loan. However, they allege that ultimately they were induced to execute the relevant documents by virtue of misrepresentations made by Vavaroutsos and Braun that the inaccuracies in the application were unimportant and their signatures a mere formality.[2]

Plaintiffs further allege that on March 24, 1975, the corporation ceased to do business and that shareholders' and directors' resolutions to file a bankruptcy petition were adopted. The corporation had by then defaulted on its obligations to pay rent and installments on its loan. Plaintiffs allege that in May, 1975, the trustee and beneficiaries of the land trust which held title to the premises leased by the corporation wrongfully obtained possession under a "void" judgment for forcible detainer and rent. Other allegations in the complaint include charges of fraud by Vavaroutsos in hiring the corporation's attorney with corporate funds to defend him in this action.

The complaint prays for a temporary restraining order to prevent the SBA from holding a summary foreclosure sale of the corporate assets;[3] a declaration that the plaintiffs' personal guaranties, standby agreements, and the SBA's loan guaranty are void because of the alleged fraud of Vavaroutsos and Braun;[4] a declaration

1. The court dismissed the amended complaint and entered a final judgment as to defendants Urkovich; Braun; and Columbia National on March 31, 1977.

2. The documents, most of which are dated April 5, 1974, include a promissory note for $110,000 with an annual interest rate of 11%; standby agreements; personal guarantees of the loan by John and Carol Schramm; and a personal guaranty by Diane L. Kesul which assigns her beneficial interest in a land trust as collateral. Kesul's interest is, however, limited

to the larger of $26,000 or the value of her interest in the trust. Defendant Vavaroutsos executed a personal guaranty and assignments of various insurance policies.

3. The Circuit Court declined to issue a temporary restraining order on June 12, 1975; the SBA held the sale on the same day.

4. The prayer for relief appears to request that the corporation's liability be limited to the unpaid balance of the principal without interest.

that the lessor's judgment is void; an injunction ordering the corporation to file for bankruptcy; and an accounting between the corporation, Vavaroutsos, and the lessor.

In its answer, the SBA counterclaimed against plaintiffs and cross-claimed against Vavaroutsos, alleging that a $110,000.00 loan to the corporation had been made pursuant to a participation agreement whereby Columbia National assigned the note, guaranties, and assignment of beneficial interest to the SBA for valuable consideration. Upon the corporation's default, the note's maturity was accelerated pursuant to its terms. The loan has been in default for more than two years. In its motion for summary judgment, the SBA asserts that the alleged fraud does not void either the SBA guaranty to the Columbia National nor the personal guaranties of the plaintiffs, and the SBA·is entitled to judgment as a matter of law.

 On a motion for summary judgment, the moving party bears the burden of establishing the absence of any genuine issue of material fact and all doubts ̒are resolved against him. *Rose v. Bridgeport Brass Co.*, 487 F.2d 804, 808 (7th Cir. 1973); *Moutoux v. Gulling Auto Electric, Inc.*, 295 F.2d 573, 576 (7th Cir. 1961). Cases involving allegations of fraud are not frequently amenable to summary adjudication. However:

> an issue of fraud . . . may be summarily adjudicated where the issue . . . is patently sham or is immaterial; or where, having substance, the moving party's papers, nevertheless, clearly establish that there is no genuine issue of material fact. 6 J. Moore's Federal Practice, ¶ 56.-17[27] (1976).

The court has reviewed the plaintiffs' misrepresentation claims and all documents filed in this case and concludes that the SBA is entitled to judgment as a matter of law against both defendant Vavaroutsos and plaintiffs. On the undisputed facts revealed by plaintiffs' answers to the SBA's interrogatories, it is clear that the plaintiffs' claims fall short of supporting any cause of action for fraud against the SBA. Defendant Vavaroutsos has made no written submissions of any kind to this court in opposition to the SBA's motion; and, as a matter of law, his pleadings are insufficient to rebut the SBA's showing of an absence of any genuine issue of material fact. 6 J. Moore's Federal Practice, ¶¶ 56.01[13]–[14], 56.11[3] (1976).

The facts, which are not disputed by the SBA for purposes of this motion, are as follows.[5] On April 1, 1974, plaintiffs John and Carol Schramm; Diane L. Kesul; and John Schramm's father met with Vavaroutsos and Braun to close the proposed loan to the corporation. Plaintiffs discovered inaccuracies in the loan application. These inaccuracies consisted of representations that the corporation owed money to Vavaroutsos, when in fact it did not; that Vavaroutsos had made a capital investment of $12,-750.00, when his actual investment was $9,000.00; and that loans to the corporation totalling $8,000.00 were outstanding to John Schramm, when the amount owed was actually larger.

After examining the papers, plaintiffs were disturbed by the misrepresentations and hesitated to sign the loan agreement. John Schramm asked Braun whether the SBA would garnish his salary should the corporation default; Braun replied that "loan people are not the cutthroat (sic) and . . . if they see that there is not much to be had in persuing (sic) a defaultor (sic) . . . they just write if off." Vavaroutsos then told the plaintiffs that the corporation would fail unless the loan was obtained and Braun assured them that the papers were necessary merely for the government's files and were otherwise unimportant. Plaintiffs then signed the loan agreement and John and Carol Schramm

---

5. Plaintiffs have conducted no discovery during the two years of litigation, despite a court order on March 25, 1976, to complete all discovery by May 25, 1976. Plaintiffs have submitted neither a memorandum nor affidavits in opposition to the SBA's motion for summary judgment. Therefore, plaintiffs' answers to the interrogatories propounded by the SBA form the basis of the court's statement of facts.

executed their personal guaranties and standby agreements. Diane L. Kesul executed her personal guaranty and assigned her beneficial interest in a land trust as collateral for the loan. Her decision to do so was based entirely on Vavaroutsos' assurances that the guaranty and assignment were risk-free.

On April 6, 1974, John Schramm telephoned Braun to order him to stop the loan because Schramm believed that the standby agreements and the inaccuracies regarding his loans to the corporation would limit the corporation's payments to him. Braun informed him that the matter was "out of his hands" and that he probably could do nothing. Schramm concluded the telephone call by ordering Braun to do nothing until Schramm called him back after conferring with Vavaroutsos. Schramm did not telephone Braun again; nor did any plaintiff ever attempt to contact the SBA. However, the plaintiffs did allow the corporation to accept the loan disbursements from the Columbia National. It is not alleged that the SBA was aware of the inaccuracies in the loan application before this lawsuit was commenced nor that the SBA participated in any way in the alleged fraud of defendants Vavaroutsos, Braun, and Columbia National.

 Although the parties failed to brief the question, the court finds that the law to be applied in the instant case is federal. *See, e. g., United States v. Olsen*, 515 F.2d 1269, 1271 (1st Cir. 1975); *First National Bank, Henrietta v. Small Business Administration*, 429 F.2d 280, 286–87 (5th Cir. 1970); *United States v. View Crest Garden Apartments, Inc.*, 268 F.2d 380 (9th Cir.), *cert. denied* 361 U.S. 884, 80 S.Ct. 156, 4 L.Ed.2d 120 (1959); *United States v. Marshall*, 431 F.Supp. 888, 890 (N.D.Ill.1977); *see generally, Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943). It is equally clear that the obligations of the Schramms, Diane L. Kesul, and George Vavaroutsos were absolute and unconditional. *United States v. Kohn*, 243 F.Supp. 293, 295 (W.D.S.C.1965); *United States v. Houff*, 202 F.Supp. 471, 475 (W.D.Va.), *aff'd*, 312 F.2d 6 (4th Cir. 1962). By proceeding with its foreclosure action

against the collateral securing the loan, the SBA was not precluded from obtaining a judgment against these guarantors. *United States v. Newton Livestock Auction Market, Inc.*, 336 F.2d 673, 677 (10th Cir. 1964).

 Turning to the merits of the motion before the court, it is well-settled that when the prime obligor has fraudulently induced a person to sign as guarantor, such fraud may not be used as a defense against the obligee in an action on the note unless the obligee had knowledge of or participated in the fraud. *See, e. g., First National Bank, Henrietta v. Small Business Administration*, 429 F.2d 280, 287 (5th Cir. 1970); *Rabon v. Putnam*, 164 F.2d 80 (10th Cir. 1947); *Standard Sur. & Cas. Co. v. Olson*, 150 F.2d 385 (8th Cir. 1945); *United States v. Basil's Family Supermarket Inc.*, 259 F.Supp. 139, 141 (S.D.N.Y.1966). Not only do the plaintiffs' answers to interrogatories affirmatively indicate that the SBA did not have knowledge of nor participate in the fraud, but plaintiffs have not even alleged that the SBA had such knowledge or so participated. Clearly, therefore, plaintiffs cannot rely on misrepresentations made to them by Vavaroutsos and Braun to avoid their obligations to the SBA which was unaware that the misrepresentations were ever made. And it borders on the frivolous to assert, as plaintiffs appear to assert, that the guaranties are voidable at their option because of misrepresentations made by them to the SBA in their loan application. *See* 37 Am.Jur.2d *Fraud* §§ 301–02, 304 (1968).

The plaintiffs' affirmative defenses to the SBA's counterclaim are insufficient at law and, therefore, would present no material factual issue even had those defenses been asserted by affidavit or otherwise supported. *See United States v. Dura-Lux International Corp.*, 529 F.2d 659, 662 (8th Cir. 1976). Whatever misrepresentations were made to the Schramms and Diane L. Kesul by their co-guarantor Vavaroutsos or Braun are irrelevant so long as the SBA played no role in the fraud. *See United States v. Spice 'N Nice, Inc.*, 262 F.Supp. 627, 629 (S.D.N.Y.1967). Defendant Vavaroutsos' unsupported general denials are likewise in-

126

sufficient to raise a material issue of fact. *Id.* at 628; 6 J. Moore's Federal Practice, *supra.*

Therefore, the motion of defendant/counter- and cross-plaintiff SBA for summary judgment against plaintiffs/counter-defendants, John B. and Carol Schramm, and Diane L. Kesul; and defendant/cross-defendant George Vavaroutsos is granted; and judgment is to be entered in favor of the SBA and against John B. and Carol Schramm, and Diane L. Kesul, and George Vavaroutsos. The SBA is hereby directed to submit to the court an appropriate judgment order within twenty days.

Further, upon entry of the aforementioned judgment order, this cause is remanded to the state court pursuant to 28 U.S.C. § 1441(c). The remaining claims are separate and independent from that involving the SBA and not within the original jurisdiction of the district court. Moreover, the dissimilarity of issues involved in the remaining claims and the absence of any discovery conducted by any remaining party cause this court to conclude that the case cannot proceed more expeditiously if retained in this court. Remand is therefore a proper exercise of this court's discretion. *See* 1A J. Moore's Federal Practice ¶ 0.163[4.–9] (1974).